IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**DENNIS EUGENE MENTZOS,**

    Petitioner,

v.                                                                                 Civil Action No. **3:19CV450**

**BUREAU OF PRISONS,**[1]

    Respondent.

## MEMORANDUM OPINION

Dennis Eugene Mentzos, a federal inmate proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2241 ("§ 2241 Petition," ECF No. 1), challenging his conviction within the Bureau of Prisons ("BOP") for the institutional infraction of possession of a hazardous tool – a cell phone. Specifically, Mentzos raises the following claims for relief:[2]

| | |
|---|---|
| Claim One: | Disciplinary Hearing Officer ("DHO") Callis violated BOP policy by failing to timely provide Mentzos with "a written copy of the decision and disposition." (ECF No. 1, at 6–7.) |
| Claim Two: | "Denial of [a] copy of [the] report . . . was deliberate" and resulted in a "violation of [Mentzos's] Due Process . . . rights." (*Id*. at 7.) |
| Claim Three: | Mentzos "was threatened . . . and assaulted verbally" by staff "with obscene and vulgar language." (*Id*.) |
| Claim Four: | "Withholding of report and refusal to process appeal is retaliatory in nature based on other, non-related issues." (*Id*. at 8) |

---

[1] Mentzos improperly named the Bureau of Prisons as a Respondent in this matter. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004) (holding that the proper respondent in a federal habeas petition is the petitioner's "immediate custodian"). Accordingly, the Clerk is DIRECTED to SUBSTITUTE Acting Warden Mark J. Bolster, who is Mentzos's immediate custodian (*see* ECF No. 13, at 1 n.1), as Respondent and to TERMINATE the Bureau of Prisons from this action.

[2] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. To the extent possible, the Court corrects the spelling, capitalization, and punctuation in the quotations from the parties' submissions.

      Claim Five:    The evidence was insufficient to support Mentzos's conviction for the institutional infraction.[3] (*Id.*)

Respondent filed a Motion to Dismiss, or in the Alternative, a Motion for Summary Judgment ("Motion for Summary Judgment," ECF No. 12),[4] asserting, *inter alia*, that Mentzos's claims are, in part, moot, or otherwise lack merit. Mentzos has responded. (ECF No. 20.) For the reasons set forth below, Respondent's Motion for Summary Judgment (ECF No. 12) will be GRANTED. Mentzos's § 2241 Petition (ECF No. 1) will be DENIED, as Claim Three is not cognizable on habeas review, Claims One, Two, and Four are moot, and Claim Five lacks merit.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the Court of the basis for the motion, and to identify the parts of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing

---

[3] In his § 2241 Petition, Mentzos failed to include a challenge to the sufficiency of the evidence as a stand alone claim. In Claim Four, however, Mentzos seems to touch upon the issue indirectly. Affording Mentzos the benefit of liberal construction, the Court construes his § 2241 Petition to contain a fifth claim implicitly challenging the sufficiency of the evidence supporting his institutional conviction.

[4] Because the Court relies upon the exhibits submitted by the parties, the Court will determine whether summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure, and declines to consider Respondent's Motion to Dismiss. As such, Respondent's Motion to Dismiss (ECF No. 11) will be DENIED AS MOOT.

affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of his Motion for Summary Judgment, Respondent submits: (1) the Declaration of Sylvia Harris, a Legal Assistant at Federal Correctional Complex Petersburg, ("Harris Decl.," ECF No. 13–1, at 1–5); (2) an Incident Report for the institutional infraction of possession of a hazardous tool (a cell phone) (ECF No. 13–1, at 7–9); (3) a Notice of Discipline Hearing Before the DHO form (*id.* at 11); (4) an Inmate Rights at Discipline Hearing form (*id.* at 13); and, (5) a copy of a DHO Report for the institutional infraction of possession of a hazardous tool (a cell phone) (*id.* at 15–18).

At this stage, the Court is tasked with assessing whether Mentzos "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial."

3

*Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. As required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Mentzos was advised of his right to respond to Respondent's motion and was specifically admonished that he must "set forth [his] version of facts by offering affidavits . . . or . . . sworn statements." (ECF No. 14, at 2–3.) Mentzos filed an unsworn response to the Motion for Summary Judgment ("Response," ECF No. 20), and he failed to submit affidavits, sworn statements, or any evidence other than a copy of the DHO Report and several pages from a publication titled *Constitutional Rights of Prisoners*. (ECF Nos. 20–1, 20–2, 20–3, 20–4, 20–5). Mentzos did, however, swear under penalty of perjury to the contents of his § 2241 Petition (ECF No. 1, at 9), and submitted two exhibits (ECF Nos. 1–1, 1–2) with the Petition. The Court will consider Mentzos's § 2241 Petition in determining the propriety of the Motion for Summary Judgment.[5] *See* Fed. R. Civ. P. 56(c).

In light of the foregoing principles and submissions, the following facts are established for purposes of the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Mentzos.

## II. SUMMARY OF PERTINENT FACTS

Mentzos is currently serving a 480–month sentence for various crimes involving minors imposed by the United States District Court for the District of Minnesota. (Harris Decl. ¶ 4.)[6]

---

[5] Despite swearing to his § 2241 Petition, Mentzos fails to specifically direct the Court to any admissible evidence that he wishes the Court to consider in opposition to the Motion for Summary Judgment. *See* Rule Fed. R. Civ. P. 56(c)(3) (explaining that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment).

[6] The Court omits the secondary citations set forth in the Harris Declaration.

During the relevant time periods, Mentzos was incarcerated at the Medium Security Federal Correctional Institution in Petersburg ("FCI Petersburg"). (*Id.* ¶ 5.)

On January 3, 2019, Officer Idjerhefere seized a cell phone from Mentzos's cell. (ECF No. 13–1, at 7.) Officer Idjerhefere described the incident as follows:

> [A]t approximately 2:12 p.m., while conducting . . . routine security rounds in F-North, as I passed cell # 58, which houses inmates Yoo, Je . . . and Mentzos, Dennis, . . . I noticed both inmates were looking at something . . . so I entered the cell. When I opened the door, Mentzos quickly stood up from the bunk and approached me. While Mentzos was partially blocking my view, I observed Yoo quickly concealed something. When I asked Yoo what he concealed, he stated that he was concealing a home-made charger he used to charge his MP3 Player. Although, at first, Yoo insists that it was the home-made charger he was concealing from me . . . after I persuaded him, he complied and retrieved a small silver color cellular mobile phone from his right pocket and handed it over to me.

(*Id.*)

On January 4, 2019, Mentzos "was read and given" a copy of Officer Idjerhefere's Incident Report by Lieutenant Sweeting. (*Id.* at 9.) Mentzos was advised of his institutional rights, and he indicated that he understood his rights. (*Id.*) Mentzos stated that "it was not his phone." (*Id.*) When Lieutenant Sweeting asked Mentzos if he ever used the phone, Mentzos declined to answer. (*Id.*)

On January 10, 2019, Mentzos appeared before the Unit Discipline Committee ("UDC") to answer for the charges. (Harris Decl. ¶ 8.) During the UDC hearing, Petitioner again stated, "I do not know anything, I didn't have a phone." (*Id.*) The matter was referred to the DHO for further inquiry. (*Id.*) At the UDC hearing, Mentzos was given a Notice of Discipline Hearing before the DHO and advised of his rights. (*Id.* ¶ 9.)

On January 28, 2019, Mentzos appeared before the DHO. (*Id.* ¶ 10.) Mentzos waived his right to present witnesses and his right to have a staff representative appear on his behalf. (*Id.*)

5

Mentzos acknowledged that he had received a copy of the incident report and that he understood his rights in the DHO hearing. (*Id*. ¶ 11.) Mentzos did not raise any issues or concerns with the discipline process at that time. (*Id*.) Mentzos made the following initial statement to the DHO: "I was going to work. I was leaning over my cellie to get something out of my locker. The Officer was right there when I turned around. I never had anything in my hand." (*Id*.) In addition to the Incident Report and Investigation, the DHO reviewed, *inter alia*, photograph(s) of the items described in the Incident report. (*Id*. ¶ 12.)

On September 23, 2019, the DHO completed the DHO Report. (*Id*. ¶ 16.) A copy of the DHO Report was delivered to Mentzos on October 2, 2019.[7] (*Id*. ¶ 17.) In the report, the DHO determined that Mentzos had "committed the prohibited act [alleged] on January 3, 2019." (ECF No. 13–1, at 16.) The DHO credited the account of Officer Idjerhefere and specifically rejected the testimony of Mentzos, finding it to be neither sincere nor believable. (*Id*. at 16–17.) The DHO concluded that there was no "logical reason" for Mentzos to be leaning over his cellmate, as he said he was, to retrieve something from his locker, because neither the cellmate's bunk nor any other furniture blocks Mentzos's locker. (*Id*. at 17.) Further, the DHO determined that Mentzos's statements did not explain why Mentzos "quickly got up from the bunk and approached [Officer Idjerhefere] as he opened the door." (*Id*.) The DHO resolved that Mentzos "intentionally block[ed]" the officer's view of his cellmate. (*Id*.)

The DHO sanctioned Mentzos by disallowing forty-one days of good conduct time ("GCT"), imposing thirty days in disciplinary segregation, and imposing nine months' loss of phone, email, and commissary use. (*Id*.) As justification for the conviction and sentence, the DHO provided the following explanation:

---

[7] On June 19, 2019, the Court received Mentzos's § 2241 Petition (ECF No. 1), more than three months before the DHO Report was completed or delivered to Mentzos.

> [A]ny inmate . . . [that] possess[es] . . . a tool or piece of equipment which may be used in an escape or escape attempt, poses a serious threat to the orderly operation and security of the institution, as well as to the health, safety and welfare of not only himself, but to all other inmates and staff.  Past escape attempts involving these types of items have resulted in serious injuries, as well as deaths, to both inmates and staff which cannot and will not be tolerated.  Inmates with an intention to escape have proven to be dangerous.  They are also attempting to break the law in their endeavor.  The sanction(s) imposed by the DHO were taken to let the inmate know that he . . . will be held responsible for his actions/behavior at all times.

(*Id.*)  Mentzos was advised of his right to appeal the DHO's findings through the BOP's Administrative Remedy Procedure within twenty calendar days of receiving the DHO Report.[8] (*Id*. at 18.)

### III. ANALYSIS

Respondent asserts that Claim Three, wherein Mentzos argues that prison officials threatened and/or insulted him, is not cognizable in the context of a federal habeas corpus proceeding.  (ECF No 13, at 2 n.2.)  Respondent further asserts that Claims One, Two, and Four, wherein Mentzos alleges that prison officials failed to provide him with a copy of the DHO Report in a timely manner, were rendered moot by the provision of the DHO Report to Mentzos on October 2, 2019.  (*Id*. at 2, 9–11.)  Finally, Respondent asserts that Claim Five, wherein Mentzos challenges the sufficiency of the evidence, lacks merit because the DHO Report was based on "some evidence," which satisfies the requirements of due process.  (*Id*. at 11–13.)

---

[8] The record fails to establish whether Mentzos appealed after receiving the DHO report on October 2, 2019.  However, it is worth noting that in March 2019, after the DHO hearing, but before the completion of the DHO Report, it does appear that Mentzos attempted to initiate an administrative appeal of the DHO's determination.  (*See* ECF No. 1–2, at 1–3.)  On March 21, 2019, Mentzos was notified that said appeal had been rejected because he did not provide a copy of the DHO Report that he wished to appeal.  (*Id*. at 1.)

### A. Claim Three is Not Cognizable Under 28 U.S.C. § 2241

"[C]hallenges to the *execution* of a federal sentence are properly brought under 28 U.S.C.A. § 2241." *United States v. Little*, 392 F.3d 671, 679 (4th Cir. 2004) (emphasis added) (footnote omitted) (citing *In re Vial*, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) (en banc)). Under 28 U.S.C. § 2241, "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he settled rules [provide] that habeas corpus relief is appropriate only when a prisoner attacks the fact or duration of confinement, *see Preiser v. Rodriguez*, 411 U.S. 475 (1973); whereas, challenges to the conditions of confinement that would not result in a definite reduction in the length of confinement are properly brought" by some other procedural vehicle, including a *Bivens*[9] action. *Olajide v. B.I.C.E.*, 402 F. Supp. 2d 688, 695 (E.D. Va. 2005) (emphasis omitted) (internal parallel citations omitted) (citing *Strader v. Troy*, 571 F.2d 1263, 1269 (4th Cir. 1978)).

In Claim Three, Mentzos maintains that investigators "threatened" and "assaulted [him] verbally with obscene and vulgar language" when he did not provide them with the password for the phone that was seized. (ECF No. 1, at 7.) Specifically, he maintains that investigators told him "[y]our ass is going back to Federal Court if you don't give us the password to this phone." (*Id.*) Claim Three does not directly challenge the "fact or duration of [Mentzos's] confinement." *See Olajide*, 402 F. Supp. 2d at 695. At most, Mentzos challenges a condition of his confinement, which would not result in a definite reduction in the length of his confinement. As such, a § 2241 petition was not the proper vehicle for Mentzos to bring this claim.

---

[9] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Even if the Court were to construe Claim Three as stating a claim under *Bivens*, Mentzos would still not be entitled to relief. "Mere threats or verbal abuse by prison officials, without more, do not state cognizable claim under [42 U.S.C. § 1983 or *Bivens*]." *Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005) (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)).

Accordingly, Claim Three will be DISMISSED.

### B. Claims One, Two and Four are Moot

Contrary to Mentzos's assertion that he was not provided with the DHO Report, after he initiated this action, Mentzos did receive the DHO Report from BOP officials. Specifically, the Court received Mentzos's § 2241 Petition on June 19, 2019 (ECF No. 1), and the DHO Report was delivered to Mentzos on October 2, 2019. (Harris Decl. ¶ 17; ECF No. 13–1, at 18.)

Therefore, with respect to Mentzos's claims that he did not receive the DHO Report, such claims are moot because after filing this action, Mentzos received the DHO Report. *See Powell v. McCormack*, 395 U.S. 486, 496 (1969) (citation omitted) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."); *Ross v. Reed*, 719 F.2d 689, 693–94 (4th Cir. 1983) ("If intervening factual or legal events effectively dispel the case or controversy during pendency of the suit, [a] federal court[] [is] powerless to decide the questions presented."); *see also Shahan v. Ormond*, No. 3:18CV200–HEH, 2018 WL 6681210, at *4 (E.D. Va. Dec. 19, 2018) (concluding that an inmate's claim regarding his failure to receive the DHO Report was moot because, after initiating the action, the inmate received the DHO Report), *aff'd*, 778 F. App'x 217 (4th Cir. 2019).

To the extent that Claim Four also alleges that prison officials violated Mentzos's rights by "refus[ing] to process [his] appeal," that portion of Mentzos's claim was also rendered moot by the delivery of the DHO Report to Mentzos on October 2, 2019. The DHO Report clearly states that Mentzos had twenty days to appeal the DHO's determination. The fact that Mentzos may not

9

have availed himself of this opportunity does not negate the fact that BOP officials were prepared to process his appeal if he chose to file one following the delivery of the DHO Report.

Accordingly, Claims One, Two, and Four are moot and will be DISMISSED.[10]

### C. Claim Five Lacks Merit

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). A liberty interest may arise from the Constitution itself or from state or federal laws and policies. *See Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005).

---

[10] As discussed in Section III. C., *infra*, the loss of vested GCT is the only protected liberty interest potentially implicated by the sanctions against Mentzos. Even if the Court were to assume, *arguendo*, that Claims One, Two, and Four were not moot, they would still fail to state a viable due process claim in this regard and would nevertheless be dismissed. "It is not the mere fact of the government's delay that violates due process, but rather the prejudice resulting from such delay." *Consolidation Coal Co. v. Borda*, 171 F.3d 175, 183 (4th Cir. 1999) (citation omitted). In the context of an inmate's delayed receipt of the DHO's report, courts have held that an inmate, such as Mentzos, does not suffer any prejudice when the inmate receives the DHO's report months after the hearing, and that such a multi-month delay does not constitute a due process violation. *See, e.g.*, *Griffin v. Ebbert*, 640 F. App'x 181, 184 (3d Cir. 2016) (concluding that there was no due process violation when an inmate received the DHO's report eighteen months after his hearing "because [the inmate] had not demonstrated that he suffered any prejudice as a result of the eighteen-month delay, [and] he had received the process he was due"); *Staples v. Chester*, 370 F. App'x 925, 929–30 (10th Cir. 2010) ("Assuming without deciding that a copy of the report was required [to be included with the administrative appeal], [the Court did] not conclude that the approximate eight-month delay in the DHO's tender of the copy to [the inmate] prejudiced his ability to bring an administrative appeal or rendered such an appeal futile."); *Cook v. Warden, Fort Dix Corr. Inst.*, 241 F. App'x 828, 829 (3d Cir. 2007) ("[E]ven if [the inmate] did not receive the DHO's written report within 10 days . . . the delay had no prejudicial effect on [the inmate's] administrative appeal and thus does not provide a basis for habeas relief."); *Shahan*, 2018 WL 6681210, at *8 (citations omitted) (discussing that, even if an inmate successfully challenged the loss of GCT in an appeal, any delay in the inmate's receipt of the DHO Report "would not have prevented [the inmate] from receiving the benefit of [the] successful appeal" because any revocation of the inmate's GCT impacts his or her *future* release date).

10

As noted above, upon finding that Mentzos had committed the charged act of possession of a cell phone, the DHO imposed the following sanctions on Mentzos: the DHO disallowed forty-one days of GCT, imposed thirty days in disciplinary segregation, and imposed nine months' loss of phone, email, and commissary use. (ECF No. 13–1, at 17.)

It is well established that inmates, such as Mentzos, have a protected liberty interest in vested GCT. *See Puranda v. Hill*, No. 3:10CV733–HEH, 2012 WL 2311844, at *3 (E.D. Va. June 18, 2012) (citing *Sciolino v. City of Newport News,* 480 F.3d 642, 653 n.9 (4th Cir. 2007)); *see also Wolff v. McDonnell*, 418 U.S. 539, 560–61 (1974). However, Mentzos does not have a protected liberty interest in his placement in disciplinary segregation, loss of phone use, loss of email, or loss of commissary use. *See Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) ("[C]hanges in a prisoner[']s location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his [or her] original sentence to prison . . . ."); *see also Wright v. Shartle*, 699 F. App'x 733, 733 (9th Cir. 2017) (citation omitted) (explaining that claims regarding the loss of phone privileges are "not cognizable under section 2241 because they do not concern the manner, location, or conditions of [an inmate's] sentence's execution"); *Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000) (finding that an inmate's "loss of commissary privileges . . . do[es] not implicate due process concerns"). Therefore, the only sanction in which Mentzos has a protected liberty interest is his loss of forty-one days of GCT.

As to the revocation of GCT, the Constitution guarantees only the following minimal process prior to revoking vested GCT:

> (1) an impartial tribunal; (2) written notice of the charges prior to the hearing; (3) an opportunity to call witnesses and present documentary evidence; (4) aid from a fellow inmate or staff representative if the issues are complex; and, (5) a written statement by the fact finder describing the evidence relied upon and the reasons for taking disciplinary action.

*Coor v. Stansberry*, No. 3:08CV61, 2008 WL 8289490, at *2 (E.D. Va. Dec. 31, 2008) (citing *Wolff*, 418 U.S. at 563–71). Additionally, "the requirements of due process are satisfied if *some evidence* supports the decision by the prison disciplinary board to revoke [GCT]." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985) (emphasis added). The Supreme Court emphasized that "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56 (citations omitted).

Here, Mentzos received all process that was due prior to the revocation of his GCT. Specifically, the undisputed evidence reflects that Mentzos received an impartial hearing, during which he had the opportunity, if he so chose, to present documentary evidence and witness testimony, and he received written notice of the charge against him prior to the hearing.[11] (*See* Harris Decl. ¶ 9.) Mentzos was also provided with an opportunity to receive assistance from a staff representative. (*Id.*) Mentzos received the DHO Report, which describes the evidence

---

[11] The Court notes that in his Response to the Motion for Summary Judgment, Mentzos claims that he did not receive an impartial hearing from the DHO. (ECF No. 20, at 2–3, 6.) Mentzos's arguments on this point are confusing, to say the least, and problematic for a number of reasons. First, Mentzos claims that someone named S. Taylor was the DHO that "presided over" his disciplinary hearing. (*Id*. at 2.) Mentzos claims that Taylor was not impartial and that he may have been complicit in smuggling cell phones into the prison. (*Id*.) The Court may not consider this unsworn, unsupported allegation in resolving the Motion for Summary Judgment. Moreover, Mentzos's claim is clearly belied by the DHO Report and Mentzos's own § 2241 Petition, both of which clearly indicate that DHO Callis presided over the disciplinary hearing. (ECF No. 1, at 6–7; ECF No. 13–1, at 18.) While Mentzos makes similar disparaging characterizations about DHO Callis in his Response, calling her "careless," "wanton," "inept[]," "incompetent[]," and questioning her impartiality (ECF No. 20, at 6), these, like all of Mentzos's other unsupported allegations contained in his Response, suffer from the same fatal flaw as his statements about Taylor. They were not submitted in accordance with the strictures of Federal Rule of Civil Procedure 56, and thus may not be considered in deciding summary judgment.

relied upon by the DHO and the reasons for the imposed disciplinary action. (*See* ECF No. 13–1, at 15–18.)

Furthermore, the DHO's findings at Mentzos's disciplinary hearing were supported by more than merely "some evidence." *Hill*, 472 U.S. at 455. Officer Idjerhefere saw Mentzos and his cell mate "looking at something in the[ir] cell." (ECF No. 13–1, at 7.) When the officer entered the cell, "Mentzos quickly stood up from the bunk and approached [him]." (*Id.*) The officer described Mentzos "partially blocking [his] view," as Mentzos's cellmate "quickly concealed something." (*Id.*) At that time, the cellmate reluctantly handed the officer a cell phone, after initially trying to lie and say it was something else. (*Id.*) The DHO concluded that Mentzos was "intentionally blocking" the officer's view of his cellmate, as the cellmate attempted to conceal the contraband at which they had both been looking. (*Id.* at 17.) The DHO also concluded, after looking at the evidence and considering the testimony, that Mentzos was not being truthful when he said that he was simply leaning over his cellmate to get something out of his locker, because the locker was not blocked by the cellmate's bunk in such a way as to require Mentzos to lean over the bunk to get to the locker. (*Id.*) The DHO clearly considered Mentzos's claims of innocence and offered a reasoned explanation for rejecting them. For the reasons stated above, Mentzos received all of the process that was due to him prior to the revocation of his GCT.

In summary, with respect to Claim Five, a review of the record reveals that Mentzos's disciplinary conviction was supported by sufficient evidence and he received all of the process that was due before the revocation of his GCT. Accordingly, Claim Five is without merit and will be DISMISSED.

## IV. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment (ECF No. 12) will be GRANTED. The Motion to Dismiss (ECF No. 11) will be DENIED AS MOOT. The § 2241 Petition (ECF No. 1) will be DENIED. Mentzos's claims will be DISMISSED.

An appropriate Final Order shall issue.

/s/ RCY
Roderick C. Young
United States Magistrate Judge

Date: September 22, 2020
Richmond, Virginia